UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUAN MANUEL ARELLANO,<br><br>                    Petitioner,<br><br>        v.<br><br>STATE OF IDAHO,<br><br>                    Respondent. | Case No. 1:19-cv-00086-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Juan Manuel Arellano ("Petitioner" or "Arellano"), who is currently incarcerated in Eagle Pass, Texas. The Petition challenges Petitioner's conviction of first-degree murder. Respondent has filed a Motion for Summary Dismissal, arguing that Petitioner's single habeas claim is procedurally defaulted. Dkt. 9. The Motion is now ripe for adjudication.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. Dkt. 7; *see* Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

MEMORANDUM DECISION AND ORDER - 1

The Court concludes that Petitioner's habeas claim is procedurally defaulted and that Petitioner has not established an excuse for the default. Alternatively, Petitioner's claim fails on the merits under de novo review. Accordingly, the Court enters the following order granting Respondent's Motion and dismissing this case with prejudice.

## BACKGROUND

In the Fifth Judicial District Court in Cassia County, Idaho, Petitioner was charged with first-degree murder, aggravated assault, and attempted murder, all with deadly weapon enhancements. Absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), the following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct:

> The charges arose out of an incident in [a bar in] southern Idaho in which Arellano shot and killed his wife, the deadly bullet then struck another person, and Arellano allegedly threatened to kill and attempted to shoot a person at the bar who tried to intervene. In part, the evidence relied upon by the State for the first degree murder charge was the early admission by Arellano to police that he had intended to kill his wife when he went to the bar that evening. The State also relied on a text message sent a few hours earlier by Arellano to a friend which read, "Voi amatar esa piruja [I'm going to kill that whore]."

State's Lodging F-4 at 1–2 and n.1.

Petitioner pleaded guilty to the first-degree murder charge and enhancement. Petitioner entered an *Alford* plea with respect to the malice aforethought and premeditation elements of the first-degree charge. State's Lodging F-4 at 2; *see North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (holding that it is constitutionally permissible for a court to accept and sentence an individual upon "a plea by which a defendant does

MEMORANDUM DECISION AND ORDER - 2

not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty."). In return, the state dismissed the remaining charges. Petitioner received a unified life sentence with 22 years fixed. *Id*. at 2.

On direct appeal, Petitioner argued that the trial abused its discretion in sentencing. The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. State's Lodging B-4, B-6.

Petitioner, proceeding pro se, pursued state post-conviction relief. He asserted a broad claim of ineffective assistance of counsel ("IAC") based on counsel's advice regarding the plea offer. State's Lodging C-1 at 6. However, the petition did "not contain a succinct list of issues." *Id*. at 169 n.1. Therefore, the state district court construed Petitioner's "summary of perceived grievances, contextual details, and commentary" as asserting fourteen separate IAC sub-claims with respect to counsel's representation during the plea process.[1] *Id*. Petitioner did not object to this construction.

Two of those fourteen IAC claims are relevant to Respondent's Motion: that (1) counsel advised Petitioner to plead guilty to first-degree murder "when the State would not be able to prove the charge"; and (2) counsel incorrectly told Petitioner "that evidence of the victim's intentions and his mental state was not relevant." *Id*. at 170, 176. Respondent refers to the first claim as the "Proof Claim," and the second claim as the "Mental State Claim." *See* Dkt. 9-1 at 3. The Court will do so as well.

---

[1] The court also construed the post-conviction petition as claiming that Petitioner's *Alford* plea was not supported by the evidence, which is not relevant to the Petition in this case.

MEMORANDUM DECISION AND ORDER - 3

The state district court summarily dismissed the entire post-conviction petition. State's Lodging C-1 at 167–84. On appeal, Petitioner raised a single IAC claim—that counsel "failed to inform [Petitioner] that a homicide committed in the heat of passion is voluntary manslaughter, not murder." State's Lodging D-1 at 5. The Idaho Court of Appeals construed this claim as asserting that counsel told Petitioner "that evidence of the victim's intentions and his mental state was not relevant." State's Lodging D-4 at 2. As Respondent accurately points out, this issue precisely corresponds to the Mental State Claim as construed by the state district court. Dkt. 9-1 at 3–4.

The court of appeals reversed the state district court in part and remanded the Mental State Claim for an evidentiary hearing. The appellate court affirmed the dismissal of all the other post-conviction claims, including the Proof Claim. State's Lodging D-4 at 6. Petitioner did not file a petition for review with the Idaho Supreme Court with respect to the dismissal of these other claims. *See* State's Lodging D-5.

On remand, the state district court held an evidentiary hearing at which both Petitioner and trial counsel testified. State's Lodging E-2. In post-hearing briefing, Petitioner's post-conviction counsel went beyond the facts and legal theory of the Mental State Claim remanded by the court of appeals, redefining the single remaining claim as follows:

> [Defense counsel] failed to advise Arellano as to the elements and application of facts as they relate to second-degree murder (and the difference of second-degree murder from first-degree murder) and specifically the elements of malice aforethought and premeditation, and … [counsel] failed to

MEMORANDUM DECISION AND ORDER - 4

> understand or communicate with Arellano the impact of a
> potential second-degree murder conviction.

State's Lodging E-1 at 43. The Court refers to this modified claim as the "Second-Degree

Murder Claim."

Noting that Petitioner had redefined the scope of the post-conviction claim and

"no longer contends that [counsel] gave him incorrect advice," the state district court held

that Petitioner had waived the Mental State Claim—the only claim that had been

remanded by the Idaho Court of Appeals. *Id.* at 81 and n.3. The court declined to

determine whether Petitioner's "new post-trial argument"—that is, the Second-Degree

Murder Claim—required analysis as a post-trial amendment under Rule 15(b)(2) of the

Idaho Rules of Civil Procedure. Instead, the court went on to deny the Second-Degree

Murder Claim on the merits. *Id.* at 81. Petitioner appealed the denial of the Second-

Degree Murder Claim.

The Idaho Court of Appeals affirmed without addressing the Second-Degree

Murder Claim. The court held that the Second-Degree Murder Claim was not merely a

refinement of the Mental State Claim, but a new claim that was not within the scope of

the court's previous remand:

> While first and second degree murder require different mental
> states, a claim that counsel advised Arellano that his mental
> state was irrelevant is not the same as a claim that counsel
> failed to advise Arellano regarding the elements of second
> degree murder. Stated differently, the differences between
> degrees of murder, the application of the particular facts of
> the case, and an attorney's responsibility to discuss the same
> with a defendant is a pointed claim which differs from the
> former claim in that it addresses a particular responsibility of
> counsel, which was not at issue in the first claim. Therefore,

MEMORANDUM DECISION AND ORDER - 5

> we conclude that the claim argued in Arellano's post-evidentiary hearing brief is a different claim from the claim originally raised in the initial petition for post-conviction relief, and which was the sole claim remanded by this Court in the original appeal.

State's Lodging F-4 at 4–5.

The court of appeals held that Petitioner had waived the Mental State Claim—which was the sole issue remanded to the state district court in the earlier appeal—by failing "to present any argument or evidence regarding" that claim. *Id.* at 6. The Idaho Supreme Court denied review. State's Lodging F-7.

## DISCUSSION

In the instant pro se federal habeas corpus petition, Petitioner asserts a single claim—that defense counsel rendered ineffective assistance of counsel by advising Petitioner "to plead guilty to first degree murder when the state would not have been able to prove the charge." Dkt. 1 at 5. This corresponds to the Proof Claim, which was included in Petitioner's initial post-conviction proceedings and dismissed by the state district court.

## 1.   The Motion for Summary Dismissal Will Be Granted Because Petitioner's Claim is Procedurally Defaulted Without Excuse

The Rules Governing Section 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see* Fed. R. Evid. 201(b); *Dawson*, 451 F.3d at 551 n.1. Where appropriate, a respondent may

file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

Respondent argues that Petitioner's claim is procedurally defaulted and that no legal excuse for the default exists. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Schlup v. Delo*, 513 U.S. 298, 329 (1995). For the reasons that follow, the Court agrees.

### A.    Procedural Default Standards of Law

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper

MEMORANDUM DECISION AND ORDER - 7

exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161–62. Procedurally defaulted claims include the following: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, and even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard …

is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.* (internal quotation marks and alteration omitted).

Once the state sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

### B. *Petitioner's Habeas Claim Is Procedurally Defaulted*

Plaintiff included his habeas claim—the Proof Claim—in his petition for state post-conviction relief. However, he did not raise that claim in the first appeal from the state district court's dismissal of that petition. *See* State's Lodging D-1. And, even if Petitioner had included the Proof Claim in that appeal, Petitioner did not file a petition for review with the Idaho Supreme Court after the Idaho Court of Appeals issued its decision in the initial post-conviction appeal—a necessary step in the exhaustion process. *See*

MEMORANDUM DECISION AND ORDER - 9

*O'Sullivan*, 526 U.S. at 847 (1999). Therefore, the Proof Claim was not fairly presented to the state courts. Because it is now too late for Petitioner to do so, the claim is procedurally defaulted. *See Gray*, 518 U.S. at 161–62.

Moreover, even if the state courts erred in construing Petitioner's claims the way they did—and, therefore, erred in finding that Petitioner raised only the Mental State Claim and not the Proof Claim on initial post-conviction appeal—this Court could not review that construction, which would be an error in the application of an adequate and independent procedural bar, as the Court will now explain.

The procedural bar at issue is the Idaho appellate courts' general rule that they will not consider claims or issues that are not supported by argument or authority. *State v. Zichko*, 923 P.2d 966, 970 (Idaho 1996). The Ninth Circuit has held that this procedural bar is adequate and independent. *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). In the initial post-conviction appeal, the Idaho Court of Appeals implicitly applied this procedural bar to conclude that Petitioner raised only the Mental State Claim—and, necessarily, that he did *not* raise the Proof Claim. In the second post-conviction appeal, the Idaho Court of Appeals also applied the waiver doctrine to conclude that Petitioner had waived his sole remaining claim, the Mental State Claim.

Federal courts have no authority to second-guess a state court's application of its own procedural bar in a particular case. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Martinez v. Ryan*, 926

MEMORANDUM DECISION AND ORDER - 10

F.3d 1215, 1224 (9th Cir. 2019) ("Federal habeas courts lack jurisdiction … to review state court applications of state procedural rules.") (quoting *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Johnson v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015) ("[A] federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules, even if they are the basis for a procedural default."). Because the appellate court relied on an adequate and independent procedural ground to dismiss Petitioner's claim without reaching the merits, this Court is bound by the state appellate court's conclusions that (1) Petitioner waived the Proof Claim by failing to assert it on initial post-conviction appeal, and (2) Petitioner waived the sole remanded issue in the second post-conviction appeal. The Court lacks jurisdiction to "correct" an incorrect application of the state courts' waiver doctrine.

For the reasons set forth above, Petitioner's single federal habeas claim is procedurally defaulted.

### C.    *Petitioner Has Not Established a Legal Excuse for the Default*

The Court's conclusion that Petitioner's claim is defaulted does not end the inquiry. If a petitioner's claim is procedurally defaulted, a federal district court still can hear the merits of the claim, but only if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence.[2] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

---

[2] Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal procedural arguments that, if sufficiently established by a petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

i.     <u>Petitioner Has Not Established Cause and Prejudice</u>

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Ineffective assistance of counsel may constitute cause for a default. For example, the failure on appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for IAC—whether at trial or on direct appeal—to serve as cause to excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance ... generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted).

In other words, before a federal court can consider ineffective assistance of trial or direct appeal counsel as cause to excuse the default of an underlying habeas claim, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition,

including through the level of the Idaho Supreme Court. If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show an excuse for that separate default, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Therefore, the general rule is that any errors of counsel—or lack of counsel—during a post-conviction action cannot serve as cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

However, the Supreme Court established an exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that, in limited circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. *Martinez* does not apply to any claims other than trial counsel ineffectiveness claims, and it can apply only if the underlying IAC claim is procedurally defaulted. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (holding that *Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland*); *Creech v. Ramirez*, No. 1:99-CV-00224-BLW, 2016 WL 8605324, at *21 (D. Idaho Jan. 29, 2016) (holding that claims were not subject to

*Martinez* because they were not fundamentally altered from claims decided on the merits in state court proceedings and, therefore, were not procedurally defaulted).

The *Martinez* cause-and-prejudice test consists of four necessary prongs: (1) the underlying IAC claim must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the IAC claim could have been brought; and (4) state law requires that an IAC claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 569 U.S. 416, 423, 429 (2013). The failure to meet any of these four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of a claim.

Petitioner relies on *Martinez* in asserting that cause and prejudice exist to excuse the default of Petitioner's habeas claim. *See* Dkt. 13. However, the *Martinez* exception applies only to claims that were defaulted in the initial-review collateral proceeding. A petitioner may not use, as cause to excuse a procedural default, any attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, [or] petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16. Petitioner raised his current habeas claim—the Proof Claim—in state district court. The default of the claim did not occur until Petitioner failed to include it *on appeal* from the dismissal of that claim. Therefore, Petitioner has

not satisfied the third *Martinez* prong, and the exception is unavailable to excuse Petitioner's default.

      ii.      <u>Petitioner Has Not Established Actual Innocence of First-Degree Murder</u>

If a petitioner cannot show cause and prejudice for his procedural default, he still can bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. at 496. That standard requires proof that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Id.* Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the actual innocence exception only if, "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, the petitioner must show that, but for the alleged constitutional error, *every* reasonable juror would vote to acquit.

MEMORANDUM DECISION AND ORDER - 15

This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). Indeed, cases where the miscarriage-of-justice standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). An actual innocence analysis "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard"; in other words, the federal court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538-39 (2006) (internal quotation marks omitted).

In considering an actual innocence gateway claim, a court has the discretion to assess the reliability and probative force of the petitioner's proffer, including making some credibility determinations, if necessary. *Schlup*, 513 U.S. at 331-332. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924,

1935 (statute of limitations context) (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner has not provided any new, reliable evidence that he is actually innocent of first-degree murder. He denies that he killed his wife with premeditation. However, the text message Petitioner sent hours before the murder, his decision to bring a loaded gun into a bar where it was not unlikely his wife would be present, and his statement to authorities that he intended to kill his wife, constitute sufficient evidence from which a jury reasonably could have found that Petitioner premeditated his wife's killing and, therefore, committed first-degree murder.

Because Petitioner has not established a legal excuse for the procedural default of his habeas claim, the Petition must be dismissed.

## 2.      Alternatively, Petitioner's Claim Fails on the Merits

The Court has the authority to consider the merits of a habeas claim even if that claim was not properly presented to the state courts. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Hayes v. Blades*, No. 1:11-CV-00502-EJL, 2015 WL 3514385, at *16 (D. Idaho June 4, 2015) (unpublished) (concluding that claims were both procedurally defaulted and subject to denial on the merits). For the following reasons, it is clear—from the face of the Petition and the state court records subject to judicial notice—that Petitioner is not entitled to relief on the merits of his habeas claim. *See* Habeas Rule 4.

### A.      Standards of Law for Merits Review

A federal court may grant habeas corpus relief when it determines that the

petitioner "is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits,

habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief

may be granted only where the state court's adjudication of the petitioner's claim:

> (1)      resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d). Importantly, this deferential legal standard applies only to claims

adjudicated on the merits in state court. *Id.*

In this case, because the Idaho Court of Appeals did not address Petitioner's

habeas claim on the merits, any merits review by this Court must be de novo—meaning

without deference to the state court's legal conclusions. *See Pirtle v. Morgan*, 313 F.3d

1160, 1167 (9th Cir. 2002). However, even on de novo review, the Court must apply the

presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the

Idaho state courts. *Id.* at 1167–68; *Kirkpatrick*, 926 F.3d at 1170 ("Unlike § 2254(d),

§ 2254(e)(1)'s application is not limited to claims adjudicated on the merits [by a state

court].").

MEMORANDUM DECISION AND ORDER - 18

**B.    On De Novo Review, Petitioner's IAC Claim Must Be Denied on the Merits**

i.    Legal Standards Governing IAC Claims

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The Supreme Court explained the standard for IATC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687–88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct

MEMORANDUM DECISION AND ORDER - 19

> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Although a criminal defendant has "no right to be offered a plea, nor a federal right that the judge accept it," the right to the effective assistance of counsel extends to the plea negotiation process." *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (citation omitted). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution" to the defendant, and to advise the defendant to consider the offers. *Id*.

"[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage," because "[f]ailure to respect the latitude *Strickland* requires can create at least two problems in the plea context":

> First, the potential for the distortions and imbalance that can
> inhere in a hindsight perspective may become all too real. The
> art of negotiation is at least as nuanced as the art of trial
> advocacy, and it presents questions further removed from
> immediate judicial supervision. There are, moreover, special
> difficulties in evaluating the basis for counsel's judgment: An
> attorney often has insights borne of past dealings with the
> same prosecutor or court, and the record at the pretrial stage
> is never as full as it is after a trial. In determining how
> searching and exacting their review must be, habeas courts

must respect their limited role in determining whether there
was manifest deficiency in light of information then available
to counsel.  AEDPA compounds the imperative of judicial
caution.

Second, ineffective-assistance claims that lack
necessary foundation may bring instability to the very process
the inquiry seeks to protect. *Strickland* allows a defendant "to
escape rules of waiver and forfeiture." Prosecutors must have
assurance that a plea will not be undone years later because of
infidelity to the requirements of AEDPA and the teachings
of *Strickland*. The prospect that a plea deal will afterwards be
unraveled when a court second-guesses counsel's decisions
while failing to accord the latitude *Strickland* mandates or
disregarding the structure dictated by AEDPA could lead
prosecutors to forgo plea bargains that would benefit
defendants, a result favorable to no one.

*Premo v. Moore*, 562 U.S. 115, 125 (2011) (internal citations omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the

prejudice analysis. "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. As the

*Strickland* Court instructed:

In making this determination, a court hearing an
ineffectiveness claim must consider the totality of the
evidence before the judge or jury. Some of the factual
findings will have been unaffected by the errors, and factual
findings that were affected will have been affected in
different ways. Some errors will have had a pervasive effect
on the inferences to be drawn from the evidence, altering the
entire evidentiary picture, and some will have had an isolated,
trivial effect. Moreover, a verdict or conclusion only weakly

MEMORANDUM DECISION AND ORDER - 21

> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695–96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### ii.        State Court Factual Findings

After the evidentiary hearing, the state district court made the following factual findings.

Based on defense counsel's initial conversations with Petitioner—which did not include an admission about the existence of the text message about killing his wife— counsel concluded very early on that the best defense for Petitioner was a lack of premeditation. Counsel determined that Petitioner would be able to show that he did not plan to kill his wife but, rather, that he killed her in the heat of passion. Counsel believed that he could convince a jury that Petitioner was guilty only of voluntary manslaughter, not murder. Counsel explained this strategy to Petitioner. State's Lodging E-1 at 78–79.

Once counsel received discovery and learned about the text message Petitioner had sent, "that suddenly changed the nature of the case from one of heat of passion, to one of intent." *Id.* at 79. Counsel had a lengthy discussion with Petitioner about this:

> [O]nce that text message showed up that changed the calculus because it was going to be very hard for us to walk in and argue that [Petitioner] did all this in the heat of passion, having just sent this text earlier. So at that juncture I know we had that discussion about the prospects of going to trial and the difference. Whereas the intent, premeditated and all that stuff, comes into play and that bolsters the state's case. We had that discussion, yes.

*Id.* (quoting State's Lodging E-2 at 25).

During the plea-bargaining process, defense counsel and Petitioner "had a conversation about the strength of the state's evidence that would support the first-degree murder charge." *Id.* at 80. Counsel described that discussion as follows:

> The conversation involved looking at the evidence from what would be established and if we went ahead with the voluntary manslaughter defense. They would use the text to show that [Petitioner] had designs to carry out this crime, that he'd thought about it and sent a text message ahead. Mr. Arellano disagreed with that particular point.
>
> We then had a discussion about the plea bargain which was offered to him and whether that would mitigate—it wasn't perfect, it was something that was offered to him, that he could take advantage of. If we went to trial of course that offer would not be on the table.
>
> So I didn't think that we could win a voluntary manslaughter defense, so at that point we were trying to figure out the best option for Mr. Arellano. I discussed with him that he could enter a plea. He wouldn't have to acknowledge [the premeditation] element of the crime [by entering an *Alford* plea to that element], we could take advantage of the plea agreement which had been offered and

> we could—as I stated earlier, we could actually argue for less
> at sentencing.

*Id.* (quoting State's Lodging E-2 at 60–61). The state district court accepted counsel's

testimony.

The state district court found that defense counsel "reviewed, analyzed, and

weighed the evidence in the underlying case" and discussed it with Petitioner. *Id.* at 83.

Defense counsel also "correctly perceived that the State had evidence of premeditation to

support the first degree murder charge if the case went to trial." *Id.* at 84.

The court rejected Petitioner's testimony that he would not have pleaded guilty if

counsel had advised him differently. This is because Petitioner's own "version of events

does not persuade the court that there was 'real potential' for a jury to acquit Mr.

Arellano on the first degree murder charge"; therefore, any decision to reject the plea

offer would not have been "rational under the circumstances." *Id.*

iii.     Petitioner Has Not Shown that His Counsel Performed Deficiently or that He Suffered Prejudice as a Result of Counsel's Advice

Petitioner has not rebutted the factual findings of the state district court by clear

and convincing evidence. *See* 28 U.S.C. § 2254(d)(1). Therefore, this Court must accept

those findings even under de novo review.

Initially, counsel reasonably believed he could persuade a jury that Petitioner did

not plan the murder of his wife. However, the text message Petitioner sent hours before

the murder evidenced just such a plan. Counsel accurately informed Petitioner of the

difference between a killing committed with premeditation and one committed in the heat

of passion. Counsel also explained how convincing a jury that Petitioner did not plan the murder was an uphill battle.

The Court concludes that defense counsel's performance was objectively reasonable in light of the evidence against Petitioner. *See Strickland*, 466 U.S. at 687–89. Counsel satisfied his "duty to communicate [the plea] offer[]" and to give accurate legal advice as to the potential benefits and detriments of accepting that offer. *Frye*, 566 U.S. at 148. The Constitution requires no more. Petitioner has not established deficient performance.

In addition, Petitioner has not satisfied the prejudice prong of *Strickland*. By accepting the plea agreement, Petitioner could still take advantage of the *Alford* plea to maintain his stance that he did not plan to kill his wife, even though he pleaded guilty to first-degree murder. Further, Petitioner fails to acknowledge that pleading guilty to first-degree murder resulted in a *substantial* benefit to him—the dismissal of the remaining charges. The decision Petitioner had to make was not whether to accept the plea to first-degree murder or go to trial on only a first-degree murder charge. It was whether to accept the plea to first-degree murder or to go to trial on first-degree murder, attempted murder, and aggravated assault charges, each of which also carried its own deadly weapon enhancement. Petitioner simply has not shown a reasonable possibility that, had counsel advised him differently, Petitioner would have rejected the plea offer and insisted on going to trial on all of those charges. *See Hill*, 474 U.S. at 59.

Because Petitioner has not established that his counsel performed deficiently or that counsel's performance resulted in prejudice, his habeas claim fails on de novo review.

## CONCLUSION

For the reasons set forth above, Petitioner's sole habeas claim is procedurally defaulted without excuse. Alternatively, the claim will be denied on the merits.

## ORDER

**IT IS ORDERED:**

1.      Respondent's Motion for Summary Dismissal (Dkt. 9) is GRANTED. Alternatively, the Petition (Dkt. 1) is DENIED on the merits. This entire case is dismissed with prejudice.

2.      The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal in this Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: April 17, 2020

B. Lynn Winmill
U.S. District Court Judge